USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 13, 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
ANIBAL JOAQUIN,

                       Petitioner,

               -v-                                    17-cv-6191 (KBF)

MICHAEL CAPRA,                         CORRECTED
                                             OPINION & ORDER[1]
                      Respondent.
------------------------------------------------------------- X

KATHERINE B. FORREST, District Judge:

     Anibal Joaquin, currently incarcerated at Sing Sing Correctional Facility in Ossining, New York and acting pro se, brings this petition for a writ of habeas corpus under 28 U.S.C. § 2254. On February 9, 2011, Joaquin was convicted of attempted murder in the second degree and robbery in the first degree in New York state court. He was sentenced as a second violent felony offender to an aggregate term of fifteen years of incarceration. Joaquin's petition argues that (1) the trial court improperly declined to conduct an inquiry into whether jurors engaged in premature deliberation, and (2) the prosecutor engaged in misconduct.

     For the reasons stated below, the petition for a writ of habeas corpus is DENIED.

I.    BACKGROUND & PROCEDURAL HISTORY

     On July 3, 2008, Joaquin and an accomplice robbed Ezequiel Reyes at gunpoint; the accomplice (who was not apprehended) also had a boxcutter. An altercation ensued, after which Joaquin dropped $880 on the ground while running

---

[1] The last page of this Opinion has been edited to correct a typographical error.

away, turned around and threatened to kill Reyes, and then fired a single shot in his direction.  Three police officers observed the shooting, apprehended Joaquin, and recovered two thousand dollars from his pocket.  No gun was recovered, though the $880 and a loaded and operable magazine were recovered off the ground.

As particularly relevant here, the prosecutor argued in summation as follows:

> Let me first point out, nothing I say is meant to denigrate the defense lawyer. I'll compliment him.  He's a good lawyer.  He worked hard.  He spoke well.  He's smart.  He's even clever.  He's a good lawyer.  But, no lawyer in this courthouse is so good, no lawyer in the whole country is so good that he can convince 12 reasonable member[s] that down is up and up is down.  No lawyer is good enough to convince you that this case has not been proven beyond a reasonable doubt.
> . . .
> So [now let's] talk about the police officers.  Defense attorney conceded they're not lying to you.  And he's gone with this theory [that] this is some mistake.  Okay.  And, again, I mean no disrespect to defense, but that's completely ridiculous.  The idea this is some kind of mistake, I don't blame the defense lawyer for saying that.  If I was sitting there, maybe I would say something like that too.  Because when the evidence is completely overwhelming, when three police officers see the man sitting next to you try and commit a murder, and get caught red-handed, right away, I mean what is there legally to say here.  It's his fireworks.  Did you hear any testimony about fireworks?  Fireworks?  They see the gun in his hand.
> . . .
> Right off the bat, another reason [defense counsel's argument that the police officers fabricated their testimonies] is completely ridiculous . . . [is that] they spent four hours going through the park and looking . . . with search lights, and [they] came back the next [day.]  They are going to do that when they didn't see this happen?  Does anyone enjoy wasting their time that much?  Does that make sense?  No.  These arguments are so far out in left field, I'm almost

embarrassed to address and talk about them, but the defense lawyer
brought them up, so I am responding to them.
(Tr. at 364-65, 374-77).

Additionally, at the conclusion of the trial court's final instructions to the jury, defense counsel stated:

> during the Court's instruction on the robbery, and I don't remember whether it was on rob one or rob two, it was when you specifically mentioned box cutter, juror number one turned around to his right and looked back at a couple of the jurors in the back row. I do not know for certain which ones. And I believe juror number two as well and they nodded to each other, which concerns me greatly, indicates that they've been discussing the case among themselves contrary to the Court's instructions. Otherwise, why would they be the looking at each other at a particular time in the charge? I don't know if anybody else notice that. I was very concerned by that and I'm not sure what solution there is to it other than to bring them in and ask them if they've been discussing the case one by one.

(Tr. at 426:3-17.) Neither the prosecutor nor the Court noticed this occurring. (Tr. at 426:18-19.) After a recess, the Court stated:

> With respect to the fact that jurors may have looked at each other at a point in the charge, does not indicate to me that there has been any inappropriate conversation or that anyone has violated any of my instructions and I think it's just speculation and I don't want to be singling out jurors for questioning without more of a basis than that. So that application is denied.

(Tr. at 427:16-23.) After deliberations, the jury convicted Joaquin of attempted second-degree murder and first-degree robbery. On May 23, 2011, Joaquin was sentenced to fifteen years' incarceration.

Petitioner appealed his conviction to the New York Supreme Court, Appellate Division ("Appellate Division"), where he argued that (1) the trial court's refusal to inquire into possible juror discussions violated his fundamental right to an

3

impartial jury, and (2) the prosecutor's summation improperly denigrated the defense. On April 5, 2016, the Appellate Division unanimously affirmed Joaquin's conviction and sentence, holding that the trial court "properly exercised its discretion when it declined to conduct an inquiry into whether jurors had engaged in premature deliberations" and that "the particular portion of the prosecutor's summation to which defendant objected on the ground of 'denigrating the defense' was generally responsive to defendant's summation, and [did] not warrant reversal." People v. Joaquin, 138 A.D.3d 422, 422 (N.Y. App. Div. 2016) (noting also "that the court repeatedly reminded the jury that such deliberations are not permitted"). As to any other summation comments, the Appellate Division held that petitioner failed to preserve his challenges. Id. It noted also that "[a]ny improprieties were harmless in light of the overwhelming evidence of guilt." Id. at 423.

The New York Court of Appeals denied Joaquin's request for leave to appeal on August 1, 2016. People v. Joaquin, 63 N.E.3d 79 (N.Y. 2016). Joaquin filed the instant petition for writ of habeas corpus on August 16, 2017.

III. LEGAL PRINCIPLES

    a. Standard for Habeas Relief

In order for a petitioner to prevail on a petition for writ of habeas corpus, he must demonstrate that the state court's decision on the merits was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(l). A state court's decision

4

is contrary to clearly established federal law if "(1) [] the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court, or (2) [] when presented with 'facts that are materially indistinguishable from a relevant Supreme Court precedent,' the state court arrived at a result opposite to the one reached by the Supreme Court." Evans v. Fischer, 712 F.3d 125, 132 (2d Cir. 2013) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)).  A state court decision is based on an unreasonable application of clearly established federal law if the state court "unreasonably applied" federal legal principles "to the facts of the case before it . . . involv[ing] some increment of incorrectness beyond error."  Id. at 133 (internal quotation marks and citation omitted).

State prisoners seeking federal habeas relief face a high burden, and a federal district court must give a state court decision due deference.  See Harrington v. Richter, 562 U.S. 86, 102 (2011) ("If this standard is difficult to meet, that is because it was meant to be."); Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (noting that Section 2254's "highly deferential" standard "demands that state-court decisions be given the benefit of the doubt").  Habeas relief will not be granted "merely because there is a reasonable possibility that trial error contributed to the verdict."  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotation marks omitted).

Additionally, it is well established that federal courts lack jurisdiction to "review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and

adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991) (citing Fox Film Corp. v. Muller, 296 U.S. 207, 210 (1935)). A state law ground for judgment is considered "adequate" to bar federal review if it is "firmly established and regularly followed" in the state. See Walker v. Martin, 562 U.S. 307, 316 (2011) (citation omitted).

  b. <u>Habeas Review of a Trial Court's Decisions Regarding Premature Deliberations</u>

When a trial court "instructs a jury to refrain from premature deliberation . . . and the jury nonetheless discusses the case before the close of trial, that premature jury deliberation <u>may</u> constitute juror misconduct." United States v. Cox, 324 F.3d 77, 86 (2d Cir. 2003) (emphasis added). The court's "investigation of juror misconduct or bias is a 'delicate and complex task.'" Id. (citing United States v. Abrams, 137 F.3d 704, 708 (2d Cir. 1998). A trial court is afforded broad flexibility due to its unique position to observe the jury on a daily basis, United States v. Peterson, 385 F.3d 127, 134 (2d Cir. 2004), and the court's treatment of juror misconduct and its decision on a jury's impartiality are reviewed for abuse of discretion only, and "only if juror misconduct and actual prejudice are found," Cox, 324 F.3d at 86.

  c. <u>Habeas Review of Prosecutorial Misconduct</u>

To warrant federal habeas relief, a prosecutor's comments must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 209, 219 (1982)). It "is not enough that the prosecutors'

remarks were undesirable or even universally condemned." Id. (quotation omitted). The due process inquiry relates to "the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219 (1982).

IV. DISCUSSION

Based on its review of the parties' submissions and the trial record, the Court concludes that: (1) the trial court responded properly to defense counsel's allegation regarding premature jury deliberations; and (2) the prosecutor's summation comments did not rise to the level of a constitutional violation.

a. The Alleged Premature Deliberations

Petitioner claims that the trial court's refusal to inquire into the possibility of premature jury deliberations violated his right to an impartial jury. However, he presents no evidence of juror misconduct or actual prejudice; he relies only on his counsel's assertion at trial. As the Appellate Division noted, defense counsel's application for an inquiry into any premature deliberations was based on alleged body language of two jurors and his inference was speculative. And in any event, even if the trial court did err, Joaquin has failed to demonstrate "a reasonable possibility that trial error contributed to the verdict." Brecht, 507 U.S. at 637. Accordingly, habeas relief is not warranted on this ground.

b. The Prosecutor's Summation

Joaquin also claims that the prosecutor's summation denigrated defense counsel and misconstrued the defense. First, this Court lacks jurisdiction to review the Appellate Division's holding that petitioner failed to preserve his challenges to a

7

majority of the prosecutor's comments.  Joaquin, 138 A.D.3d at 422.  The contemporaneous objection rule is "firmly established and regularly followed" in New York state courts, Downs v. Lape, 657 F.3d 97, 102 (2d Cir. 2011), and therefore the Appellate Division's judgment is adequate and independent to bar federal habeas review.[2]  See Coleman, 501 U.S. at 729 (citation omitted).

Second, the Court concludes that the prosecutor's comments during summation did not deprive petitioner of a fair trial or violate his constitutional rights.  Petitioner faces the heavy burden of demonstrating that the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Darden, 477 U.S. at 181 (quotation omitted); see also United States v. McCoy, 692 Fed. App'x 17, 21-22 (2d Cir. 2017) (discussing the "necessarily improvisatory nature of rebuttal" and holding that a trial court did not plainly err by allowing a prosecutor to respond to defense counsel's summation) (citing United States v. Farhane, 634 F.3d 127, 167 (2d Cir. 2011); United States v. Tocco, 135 F.3d 116, 130 (2d Cir. 1998) ("[W]here the defense summation makes arguments and allegations against the government, the prosecutor may respond to them in rebuttal."); United States v. Rivera, 971 F.2d 876, 883 (2d Cir. 1992) (stating that defense argument may "open the door" to otherwise improper rebuttal)).  The Court finds no reason to disagree with the Appellate Division's conclusion that the prosecutor was responding to defendant's summation, and thus

---

[2] Alternatively, the Court concludes that the unpreserved comments, much like the prosecutor's attempt at a joke discussed infra, did not deprive petitioner of a fair trial or violate his constitutional rights under the standard set out in Darden.

8

did not warrant reversal. Joaquin, 138 A.D.3d at 422. Accordingly, habeas relief is not warranted on this ground.

V.   CONCLUSION

The Court concludes that: (1) the trial court's decision not to inquire into potential premature deliberations did not violate petitioner's constitutional rights; and (2) the prosecutor's comments in summation did not violate petitioner's constitutional rights.

Accordingly, Joaquin's petition for writ of habeas corpus is DENIED. The Clerk of Court is directed to terminate this action.

SO ORDERED.

Dated:   New York, New York
         July 13, 2018

                                          _____
                                              KATHERINE B. FORREST
                                              United States District Judge

cc:
Anibal Joaquin
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562

9